```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

Gary Neff,

     Plaintiff,

  vs.                                  Case No. 2:06-cv-856
                                        JUDGE GRAHAM

Standard Federal Bank c/o,
ABN AMRO Mortgage Group, Inc.,
et al.,

     Defendants.


<u>OPINION AND ORDER</u>

     Plaintiff Gary Neff, an Ohio resident, brings this action for alleged damages resulting from a modification to his mortgage and from subsequent foreclosure attempts by defendants Standard Federal Bank (the "Bank") and Federal Home Loan Mortgage Corporation ("Freddie Mac"). Neff asserts state law claims for intentional and negligent misrepresentation, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and trespass and conversion. Neff also seeks punitive damages. The Court has diversity jurisdiction under 28 U.S.C. § 1332 because both defendants are incorporated and have their principal places of business outside of Ohio and because Neff seeks $1 million in damages.

     Since filing his complaint, Neff has dismissed with prejudice his claims against the Bank. Freddie Mac is now the sole defendant. This matter is before the Court on Freddie Mac's motion to dismiss. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

**I.  Background**

  **A.  Factual Allegations**

Neff alleges that he entered into a loan agreement in August 1995 whereby he granted the Bank a mortgage interest in his home in Belmont, Ohio.  At some unspecified point, Freddie Mac purchased the Bank's interest in the mortgage, though the Bank continued to service the loan on Freddie Mac's behalf.

Neff alleges that he fell behind on his monthly mortgage payments in 2001.  Through its agent William Wallace, Freddie Mac allegedly solicited Neff into entering a modification agreement for the purported purpose of lowering his monthly payment.  Wallace allegedly misrepresented to Neff's wife, Pamela Neff, that the modification would cause Neff's monthly loan payment to decrease to $377.33, including property tax and homeowners insurance.  The modification was executed on November 30, 2001.  Neff later found out that the monthly payment amount of $377.33 did not include Neff's escrow obligations.

In the post-modification period, Neff made an unspecified number of payments in the amount of $377.33.  He alleges that these payments, though properly mailed, were not applied to his mortgage.  By May 8, 2002 the Bank informed Neff of its intent to initiate a foreclosure action, despite Pamela Neff's pleas to the Bank that her husband had properly mailed the payments.

On June 27, 2002, the Bank filed a foreclosure action against Neff in state court.  After the foreclosure action was filed, the Bank or Freddie Mac discovered at least two of the payments that Neff had mailed.  On July 24, 2003, the state court granted summary judgment in favor of the Bank.

A sheriff's sale was held on November 11, 2003. However, Neff did not receive proper notice of the sale, and the state court set aside the judgement and sale. The court set the matter for a hearing on January 12, 2004. In December 2003, Neff and his family moved to live with relatives in Pennsylvania. Neff and his family moved "many of their belongings, including the essentials," with them to Pennsylvania. Neff alleges that he left behind "several belongings" in his house.

The complaint alleges that Harris Real Estate, acting as agent for Freddie Mac, took possession and control of the house on December 18, 2003. Harris Real Estate changed the locks to the house and removed what remained of Neff's belongings. Harris Real Estate actively marketed and tried to sell Neff's house until he hired an attorney who insisted that Harris Real Estate stop its efforts to sell the house. The complaint further alleges that the house was vandalized and looted.

**B.   Neff's Claims**

Neff initially filed suit against the Bank and Freddie Mac, but the Bank has since been voluntarily dismissed as a defendant. Below is a summary of Neff's claims against Freddie Mac.

Count I for intentional misrepresentation alleges that Freddie Mac, through it agent William Wallace, intentional misrepresented that the mortgage modification would result in a total monthly payment of $377.33, including escrow obligations. Neff claims that he was induced into entering the modification agreement in reliance on the alleged misrepresentation.

Count II for negligent misrepresentation alleges that Freddie Mac, through William Wallace, negligently supplied false

information to Neff about the mortgage modification's effect on his monthly payments.

Count III for breach of the covenant of good faith and fair dealing alleges that Freddie Mac, as a financial institution authorized to do business in Ohio, was required to act in good faith and to deal fairly with Neff. The complaint alleges that Freddie Mac breached its duty because its agent, Harris Real Estate, took possession and control of Neff's house before the state court could make a final determination as to the ownership of the house.

Count IV for intentional infliction of emotional distress alleges that the same conduct concerning Harris Real Estate was extreme and outrageous. The complaint alleges that Freddie Mac intended, and did in fact cause, Neff to suffer severe emotional distress from losing possession of the house, having his remaining belongings removed, and having the house vandalized and looted.

Count V for trespass and conversion alleges that the actions of Freddie Mac, through its agent Harris Real Estate, in taking possession of the house constituted a trespass and conversion of Neff's property rights.

The complaint further alleges that Neff is entitled to punitive damages because Freddie Mac's conduct was willful, wanton, and with complete indifference to its obligations under Ohio law.

**C.  State Court Proceedings**

Both parties have expressly requested the Court to take judicial notice of the proceedings in state court. The complaint mentions these proceedings, but leaves many gaps. The parties both have filed documents from the state court proceedings which give

4

this Court a clearer picture of what happened.

In June 2002, the Bank filed a foreclosure action against Neff in the court of common pleas of Belmont County, Ohio. Freddie Mac was not a party to the action. In November 2002, Neff filed a *pro se* answer and "cross complaint" against the Bank. The Bank filed a motion for summary judgment, which the court granted on July 24, 2003. The court then ordered a sheriff's sale, which was held on November 12, 2003. The Bank successfully bid $36,0000 for the property and assigned its bid to Freddie Mac. On November, 20, 2003, the court set aside the judgment and sale, noting that the judgment of foreclosure "may have been granted in error."

The court set a hearing for January 12, 2004 and stated that Neff could reside in the house pending further order of the court. The state court's docket does not reflect any outcome of the hearing, but Freddie Mac represents, without dispute from Neff, that the matter was referred to mediation.

The mediation did not take place, for reasons unknown to the Court. On March 19, 2004, counsel entered an appearance on behalf of Neff. On March 24, 2004, the Bank voluntarily dismissed its claims against Neff. Still pending were Neff's counterclaims against the Bank. On April 26, 2004, the court granted default judgment against the Bank on Neff's counterclaims and set a jury trial for damages. Prior to trial, the Bank filed a motion to limit Neff's damages to $100,000, the amount demanded in his counterclaim.

Before trial and before the motion to limit damages was decided, the state court judge reassigned the case to another judge. This second judge recused himself. The case was then

5

reassigned to a third judge, who passed away. The case was reassigned again to a fourth judge on April 7, 2006.

On May 15, 2006, the court granted the Bank's motion to limit damages. In response, Neff filed a motion for leave to amend his counterclaim and to add Freddie Mac as a defendant. In the proposed amended counterclaim, Neff asserted the same claims against Freddie Mac that are asserted in the case before this Court. On November 9, 2006, the state court denied Neff's motion as untimely, holding that Neff should have sought leave to amend his counterclaim before default judgment had been entered in his favor.

Neff appealed the decision denying his motion for leave to amend his counterclaim. On February 16, 2007, the court of appeals denied Neff's appeal as improper because the trial court's order was not a final order under Ohio Revised Code § 2505.02.

Following the decision on appeal, the Bank and Neff settled their dispute and the state court action was voluntarily dismissed on August 20, 2007.

**II. Standard of Review**

This matter is before the Court on Freddie Mac's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a district court weighing a motion to dismiss asks "not whether a plaintiff

6

will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory. Weiner v. Klais & Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997). Though the complaint need not contain detailed factual allegations, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Bell Atlantic Corp. v. Twombly, 550 U.S. ___, 127 S.Ct. 1955, 1964-65 (2007); Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)("It is not . . . proper to assume that [the plaintiff] can prove facts that it has not alleged . . . ."). Plaintiff must provide more than labels and conclusions, or a formulaic recitation of the elements of a cause of action, Twombly, 127 S.Ct. at 1965, and the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)(the court is not required to accept as true unwarranted legal conclusions or factual inferences). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978).

As a general rule, matters outside the pleadings may not be

considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Rule 56. Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999); Weiner v. Klais & Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997). However, courts may consider matters of public record. Jackson, 194 F.3d at 745. See also New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003)("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.").

**III. Discussion**

    **A.   Intentional Misrepresentation**

Freddie Mac first argues that Neff's claim for intentional misrepresentation is barred by the applicable statute of limitations. Freddie Mac correctly notes that Ohio's statute of limitations for this claim is four years. See Ohio Rev. Code § 2305.09(C). The alleged misrepresentations were made prior to the mortgage modification executed on November 30, 2001. Neff filed this action on October 12, 2006.

The limitations period for fraud claims under § 2305.9(C) is subject to a "discovery rule." See Ohio Rev. Code § 2305.09 (action for fraud does not accrue until "the fraud is discovered"). The limitations period "begins to run when the claimant discovered or, in the exercise of reasonable care, should have discovered the fraud." Bossey v. Al Castrucci, Inc., 105 Ohio App.3d 666, 669, 664 N.E.2d 1301, 1303 (Ohio Ct. App. 1995) (citing Investors REIT

8

One v. Jacobs, 46 Ohio St.3d 176, 179, 546 N.E.2d 206, 209 (Ohio 1989)). "'[A]ctual discovery, or what might by the exercise of due diligence have been discovered,' triggers the running of the limitations period." Bossey, 105 Ohio App.3d at 669, 664 N.E.2d at 1303 (quoting Kettering v. Berger, 4 Ohio App.3d 254, 261, 448 N.E.2d 458, 465 (Ohio Ct. App. 1982)). "If by an ordinary degree of prudence the fraud could have been discovered, such opportunity is equivalent to knowledge." Kettering, 4 Ohio App.3d at 261, 448 N.E.2d at 465.

In his response brief,[1] Neff acknowledges that within a few months after entering into the mortgage modification he discovered that William Wallace had misrepresented that Neff's monthly payments would cover his escrow obligations. Indeed, the complaint alleges that Neff discovered the alleged fraud no later than May 2002. See Compl., ¶¶31-35. Neff contends, however, that he reasonably believed for many years that Wallace was the agent of the Bank. Neff claims that he did not discover that Wallace was an employee of Freddie Mac until a deposition was conducted in April 2006 in the state court action between the Bank and Neff.

Neff argues that the statute of limitations for his fraud claim does not begin to run until he had a reasonable opportunity to discover that Wallace worked for Freddie Mac instead of the Bank. Neff contends that the discovery rule applies when the injured party is not aware of the identity of the tortfeasor. In support Neff cites Viock v. Stowe-Woodward Co., 13 Ohio App.3d 7,

---

[1] The Court notes that Neff's 22 page brief does not comply with S.D. Ohio Local Civil Rule 7.2(a)(3) limiting the length of memoranda to 20 pages, unless a table of contents and a summary are attached. Counsel is cautioned that briefs not complying with Local Civil Rule 7.2(a)(3) in the future may be stricken.

9

12, 467 N.E.2d 1378, 1384 (Ohio Ct. App. 1983), in which the court stated that the statute of limitations for products liability actions under Ohio Revised Code § 2305.10 begins to run when a plaintiff: (1) knew or reasonably should have known that he had been injured; and (2) knew or reasonably should have known that his injury was caused by the defendant.

The decision in Viock does not support Neff's argument for two reasons.  First, Neff knew the identity of Wallace right from the time the misrepresentation was made.  There are no allegations that Wallace concealed his identity or misrepresented to Neff who he worked for.  Neff provides no explanation for why he, knowing that Wallace made the misrepresentation, did not have a reasonable opportunity to discover that Wallace worked for Freddie Mac.  Four years from the date of the alleged misrepresentation was more than sufficient time for Neff to have investigated the circumstances of the fraud and discovered that Wallace worked for Freddie Mac.  Cf. Blair v. Lucent Technologies Inc., No. 2:06-cv-450, 2007 WL 869715, at *9 (S.D. Ohio March 20, 2007) ("Plaintiffs have misinterpreted the discovery rule and are essentially urging this Court to give Plaintiffs time to discover enough facts to warrant a 'legally sustainable' action before the statute of limitation begins to run. However, this is the purpose of the discovery phase of litigation, which begins after a complaint is filed.").

Second, Viock's holding relates to products liability actions, which have their own statute of limitations and discovery rule. See Ohio Rev. Code § 2305.10(C) (cause of action for product liability accrues when "by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that

is related to the exposure"). A cause of action for fraud accrues when "the fraud is discovered." Ohio Rev. Code § 2305.09. Ohio courts have interpreted this language to mean that the statute of limitations for fraud claims is tolled "until the plaintiff discovers or, in the exercise of reasonable care, should have discovered *the complained-of injury*." Investors REIT One, 46 Ohio St.3d at 180, 546 N.E.2d at 210 (emphasis added); accord Helman v. EPL Prolong, Inc., 139 Ohio App.3d 231, 248, 743 N.E.2d 484, 497 (Ohio Ct. App. 2000). Thus, in fraud cases, what matters for purposes of the statute of limitations is the discovery of the fraud itself, not the identity of wrongdoer. See Marks v. KeyBank N.A., No. 84691, 2005 WL 433528, at *4 (Ohio Ct. App. Feb. 24, 2005); Goldberg v. Cohen, No. 01 CA 49, 2002 WL 1371031, at *6-7 (Ohio Ct. App. June 13, 2002); Brown v. Quimby Material Handling, Inc., No. 1999 AP 110066, 2000 WL 874917, at *3 (Ohio Ct. App. June 15, 2000) ("[T]he discovery rule is predicated on the 'discovery of the injury' not the perpetrator of the injury."). As Chief Justice Moyer of the Ohio Supreme Court wrote in dissent in a case extending the discovery rule to wrongful death cases, "The holdings of this court . . . plainly indicate that discovery of the injury is the defining event that triggers the running of the statute of limitations." Collins v. Sotka, 81 Ohio St.3d 506, 512, 515, 692 N.E.2d 581, 585, 587 (Ohio 1998) (Moyer, J., dissenting) (case citations omitted).

According to the complaint, Neff discovered that his modified monthly payment did not include escrow obligations at some point between November 30, 2001 (the date of the modification agreement) and May 4, 2002 (the date the Bank informed Neff of its intentions

11

to foreclose). Thus, Neff learned of the complained-of injury no later than May 2002. The discovery rule cannot be extended past this point. See Blair, 2007 WL 869715, at *9 ("While Ohio courts will permit liberal application of the discovery rule in cases where plaintiffs do not learn of their own injuries immediately . . . Plaintiffs here did know immediately what injury they had allegedly suffered."). Because Neff waited longer than four years after discovering the fraud to file his claim, it must be dismissed.

    **B.**    **Negligent Misrepresentation**

Freddie Mac similarly argues that Neff's claim for negligent misrepresentation is barred by the applicable four-year statute of limitations. See Ohio Rev. Code § 2305.09(D). Claims of negligent misrepresentation do not receive the benefit of the discovery rule. While § 2305.09 expressly makes the discovery rule available for claims of fraud, negligent misrepresentation is not listed in the statute as one of the causes of action for which the discovery rule is available. Ohio courts have therefore held that the discovery rule does not extend to claims for negligent misrepresentation. See Orshoski v. Krieger, No. OT-01-009, 2001 WL 1388037, at *6 (Ohio Ct. App. Nov. 9, 2001); Chandler v. Schriml, No. 99AP-1006, 2000 WL 675123, at *3 (Ohio Ct. App. May 25, 2000) ("R.C. 2305.09 has not extended the 'discovery rule' to toll the statute of limitations in negligent misrepresentation cases."). Because the cause of action for negligent misrepresentation accrued in November 2001 and Neff did not file his claim until October 12, 2006, his negligent misrepresentation claim must be dismissed.

12

**C.     Breach of the Covenant of Good Faith and Fair Dealing**

Freddie Mac next argues that Ohio does not recognize an independent cause of action for breach of the covenant of good faith and fair dealing. According to Freddie Mac, the claim exists only in the context of a breach of contract claim. Freddie Mac contends that the claim must be dismissed because Neff did not assert a breach of contract claim or cite any contractual basis for his claim for breach of the covenant of good faith and fair dealing.

Freddie Mac's argument is an accurate characterization of the law in Ohio, a point that even Neff concedes. Ohio courts have held that public policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other. Littlejohn v. Parrish, 163 Ohio App.3d 456, 463, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005). The duty of good faith "does not authorize an independent cause of action." Cook v. Home Depot U.S.A., Inc., No. 2:06-cv-571, 2007 WL 710220 at *4 (S.D. Ohio, March 6, 2007). Instead, the duty "serves as a 'salutary rule of construction' in evaluating contractual performance." Id. (citing Bolling v. Clevepak Corp., 20 Ohio App.3d 113, 121, 484 N.E.2d 1367, 1376 (Ohio Ct. App. 1984)). Because the "duty of good faith originates from a contractual relationship," it "cannot exist until the underlying contract is formed." Walker v. Dominion Homes, Inc., 164 Ohio App.3d 385, 397, 842 N.E.2d 570, 580 (Ohio Ct. App. 2005) (citing Ed Schory & Sons, Inc. v. Soc. Natl. Bank, 75 Ohio St.3d 433, 444, 662 N.E.2d 1074 (Ohio 1996)). See also Thomasville Furniture Industries, Inc. v. JGR, Inc., 3 Fed.Appx. 467, 472, 2001 WL 128331, at *4 (6th Cir.

13

2001) (surveying Ohio case law to find that the implied duty of good faith is a contract "construction aid" in breach of contract cases and "is not an independent basis for a cause of action").

Here, the basis for the claim for breach of the duty of good faith is not in contract. Rather, the complaint vaguely cites Freddie Mac's unnamed duties as an institution authorized to do business in Ohio. Furthermore, the conduct that Neff claims breached the duty of good faith – the actions of Freddie Mac's alleged agent, Harris Real Estate, in taking possession of Neff's house and attempting to sell it – have no basis in contract. Accordingly, Neff's claim for breach of the covenant of good faith and fair dealing is dismissed.

**D. Intentional Infliction of Emotional Distress**

With respect to Neff's claim for intentional infliction of emotional distress, Freddie Mac argues that it is barred by the statute of limitations. Claims for intentional infliction of emotional distress are governed by the four-year statute of limitations period set forth in Ohio Revised Code § 2305.09(D). See Yeager v. Local Union 20, 6 Ohio St.3d 369, 375, 453 N.E.2d 666, 672 (Ohio 1983). Freddie Mac contends the complaint does not clearly identify which conduct is alleged to have inflicted the emotional distress, and that any allegations of conduct occurring before October 12, 2002 cannot be considered.

Freddie Mac is correct that Count IV for emotional distress does not describe the actionable conduct. But liberally construing the complaint as whole, it is clear to the Court that the actionable conduct is Harris Real Estate's allegedly taking possession of Neff's house in December 2003, removing and

14

destroying Neff's personal belongings, attempting to sell the house, and allowing the house to be looted and vandalized. Neff filed his claim for intentional infliction of emotional distress within four years of these alleged events.

Freddie Mac next argues that the complaint fails to state a claim for intentional infliction of emotional distress. The Supreme Court of Ohio has recognized the tort of intentional infliction of emotional distress, holding: "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." Yeager, 6 Ohio St.3d at 369, 453 N.E.2d at 667. The elements of a claim for intentional infliction of emotional distress are:

> (1) the defendant intended to cause emotional distress, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

Eblin v. Corr. Med. Ctr., 158 Ohio App.3d 801, 803, 822 N.E.2d 814, 820-21 (Ohio Ct. App. 2004); Ashcroft v. Mt. Sinai Med. Ctr., 68 Ohio App.3d 359, 366, 588 N.E.2d 280, 284 (Ohio Ct. App. 1990). The distress inflicted must be more than upset or hurt feelings; it must be such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Davis v. Billow Co. Falls Chapel, 81 Ohio App.3d 203, 207, 610 N.E.2d 1024, 1027 (Ohio Ct. App. 1991).

Both parties point the Court's attention to Matthews v. Homecoming Financial Network, No. 03 C 3115, 2005 WL 2387688 (N.D. Ill. Sept. 26, 2005). In Matthews, the court denied a motion to dismiss a claim for intentional infliction of emotional distress against the defendant lender. The lender, which allegedly knew that it had no basis for evicting Matthews, entered his home and changed the locks while Matthews and his family were living there. The lender removed all of Matthews' personal property from his home. Matthews alleged that the lender's actions forced him out onto the streets and that he was homeless for several months and was forced to live apart from his wife and two small children. The court held that these allegations supported an emotional distress claim. The court noted in particular the alleged emotional distress from Matthews being homeless for several months and separated from his wife and children. Matthews, 2005 WL 2387688, at *7.

The case here is readily distinguishable from Matthews. Unlike the Matthews, Neff was not left homeless and separated from his family and personal property. The complaint states that Neff and his family moved "many of their belongings, including the essentials," with them to Pennsylvania to live with relatives in early December 2003. Neff no longer lived in his house by the time Harris Real Estate allegedly took possession of it on December 18, 2003. Though Neff left belongings at the house that were later allegedly removed or destroyed by Harris Real Estate, it is clear from the complaint that only "several," non-essential belongings were left at the house. Further, though Neff alleges that the house was vandalized and looted, Harris Real Estate is not alleged

16

to have intentionally caused or intentionally allowed the vandalizing and looting to have taken place. The complaint at best alleges negligence in Harris Real Estate allowing the vandalizing and looting to occur.

Even more deficient are the allegations relating to Neff's emotional injury. The complaint alleges in conclusory fashion that Neff suffered "severe emotional distress." The complaint contains no further allegations regarding the injury. A recent ruling of the United States Supreme Court makes clear that "factual allegations must be enough to raise the claimed right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007). Plaintiff must provide more than labels and conclusions, or a formulaic recitation of the elements of a cause of action, Twombly, 127 S.Ct. at 1965, and the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Neff's conclusory allegation that he suffered severe emotional distress is not sufficient.

The Court notes that while this is not an action for negligent infliction of emotional distress, where the emotional injury must be "severe and debilitating," Paugh v. Hanks, 6 Ohio St.3d 72, 78, 451 N.E.2d 759, 765 (Ohio 1983), Neff has not alleged that he has suffered any diagnosed mental condition or been treated for a clinical mental condition. Such allegations, though not required for pleading a claim of intentional infliction of emotional distress, would have helped his claim survive a motion to dismiss.

Neff's response brief attempts to cure the complaint's deficiencies by adding new factual allegations concerning his

17

emotional injury. The Court may not consider these new allegations not contained in the complaint.

Accordingly, Neff's claim for intentional infliction of emotional distress is dismissed.

### E. Abstention

Freddie Mac argues that the Court should abstain from hearing all of Neff's claims, including the ones for trespass and conversion, because parallel proceedings exist in state court. The Court notes that since Freddie Mac filed its motion to dismiss, the state court proceedings were voluntarily dismissed pursuant to settlement on August 20, 2007. As such, parallel state court proceedings no longer exist and the abstention argument does not apply. See Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521 (1982) (in order for the abstention doctrine to apply, there must be an "ongoing state judicial proceeding").

### F. Punitive Damages

Lastly, Freddie Mac argues that Neff's demand for punitive damages must be dismissed. However, punitive damages are available in tort actions involving trespass and conversion. Wooten v. Knisley, 79 Ohio St.3d 282, 291, 680 N.E.2d 1245, 1252 (Ohio 1997). Freddie Mac has not sought dismissal of the trespass and conversion claims on grounds other than abstention. Neff is entitled to an opportunity to show through discovery whether defendant acted with the actual malice necessary for an award of punitive damages. Preston v. Murty, 32 Ohio St.3d 334, 336, 512 N.E.2d 1174, 1176 (Ohio 1987).

**IV. Conclusion**

For the reasons stated above, defendant Freddie Mac's January 25, 2007 motion to dismiss the complaint (doc. 9) is granted in part and denied in part.  The motion is granted as to plaintiff Neff's claims for intentional misrepresentation, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress.  The motion is denied as to Neff's claims for trespass and conversion, as well as his demand for punitive damages.

The clerk is instructed to deny the Bank's motion to dismiss (doc. 8) as moot, as the Bank is no longer a defendant in this action.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: September 27, 2007